## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| APRIL J. FREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-289-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

Plaintiff April Frey seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 14].

## Background

Plaintiff was born on February 11, 1981 [R. 57], and was 26 years old on the date of the hearing before the Administrative Law Judge ("ALJ"). [R.343]. Plaintiff attended street school until the 9th grade when she was expelled after being arrested on marijuana charges. She later earned a GED. [R. 128]. Plaintiff is married but was in the process of obtaining a divorce at the time of the hearing. Plaintiff ran away from home at age 10 and spent most of her life in group homes. She

---

[1] Plaintiff's application for SSI was denied initially and on reconsideration. A hearing before Administrative Law Judge Richard Kallsnick was held on August 30, 2007. [R.336]. By decision dated September 10, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 19]. The Appeals Council denied plaintiff's request for review on March 14, 2008. [R. 9]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

stayed at various shelters until age 16, when she became pregnant and moved to the Madonna House. She married the father of her first two children at age 18 and they separated at age 19. [R. 129]. She later had three children from a different man while still married to the first man. At the time of the hearing, the father of her three younger children was incarcerated. [R. 164]. Plaintiff's children range from 2 to 9 years old. [R. 343]. Plaintiff is estranged from her parents and is raising her five children on her own. [R. 128,164]. Plaintiff's work history is minimal. She worked as a cashier for Arby's and McDonald's, as a landscaper for TruGreen Landscape, and as an assistant at Lords & Ladies Child Development Center. [R. 55-56, 344]. She was discharged from her last job because of poor attendance. [R. 344]. Plaintiff's source of support is $483.00 monthly from Aid to Families with Dependent Children and food stamps. [R. 58-59].

In her application for SSI, plaintiff claimed to be unable to work since January 15, 2005, as a result of acute anxiety, post traumatic stress syndrome, high blood pressure, back problems, obsessive compulsive behavior and bipolar distress. [R. 73]. In her appeal of the ALJ's decision, plaintiff claimed to need SSI as a source of income to survive. [R. 86].

Plaintiff has a history of substance abuse. She used street drugs at 12 years old and smoked cigarettes at age 15. [R. 121, 156]. Since age 16 years old, she has a history of abusing crank, crack cocaine, speed, marijuana, methamphetamine, and alcohol. [R. 156, 248]. Plaintiff was arrested on marijuana charges in 1996.

Plaintiff has not been treated on an inpatient basis for any psychological problems but was treated on an out patient basis for about a year at CREOKS Mental Health Center and at Family and Children's Services. Subsequently, a therapist from Day Spring Mental Health Center provided her in-home counseling twice a week. [R. 247]. Plaintiff takes Metoprolol, Hydroxyzine, and Lamictal.

Her medications are prescribed by David Shadid, D.O. who she sees once every six weeks for a review of symptoms. [R. 247].

## ALJ's Decision

In assessing plaintiff's qualification for SSI, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since August 3, 2005, the application date. [R. 21]. At step two, the ALJ determined plaintiff's severe impairment to be bipolar I disorder and borderline personality disorder. [R. 21]. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically sections 12.04 (affective disorders), 12.08 (personality disorders), or 12.09 (substance addition). [R. 21]. The ALJ addressed plaintiff's allegation of disabling back pain but found it not severe in part because "the medical records includes [sic] no diagnosis or treatment records supporting this." [R. 21]. The ALJ also cited objective medical evidence: "Her MRI reports on her spine have been normal and she has been found to have the full range of motion of her cervical and lumbosacral spine." [R. 21]. At step three, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work. He found her limitations to be nonexertional and restricted to simple tasks and routines without exposure to the public. [R. 22]. At step four, the ALJ found plaintiff had no past relevant work and therefore transferability of job skills was not material to the determination of disability. [R. 25]. At step five, after the ALJ considered plaintiff's young age, education (GED), minimal work experience, RFC, and the Medical-Vocational Guidelines ("Grid"), he consulted a vocational expert to determine the extent to which plaintiff's limitations impeded her ability to perform unskilled work in the national economy. The vocational expert listed five unskilled jobs

which met the qualifications: sorter, maid, laundry presser, assembler and miscellaneous laborer. [R. 25]. Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. [R. 26]. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Issues Raised

On appeal plaintiff raises three issues of error.

1. The ALJ failed to consider all of plaintiff's medical impairments, singly or in combination.

2. The ALJ did not articulate specific reasons for rejecting the medical opinion of plaintiff's treating physicians and other medical sources.

3. The ALJ's hypothetical to the vocational expert was incomplete because the ALJ failed to consider all of plaintiff's impairments and the limitations resulting from those impairments.

[Dkt. 16 at 4].

## Discussion

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

---

[2] The five-step sequence provides that the claimant: (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

Case 4:08-cv-00289-tlw   Document 18 Filed in USDC ND/OK on 11/02/09   Page 5 of 13

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

First, plaintiff contends the ALJ failed to consider all of plaintiff's impairments, singly or in combination, in determining the severity of plaintiff's mental impairment and in assessing plaintiff's RFC. Specifically, plaintiff contends the ALJ did not indicate whether plaintiff's panic disorder (with or without agoraphobia), or obsessive-compulsive disorder, or mood disorder were, by themselves or in combination, severe impairments. The Court disagrees.

The ALJ's decision makes clear that by finding plaintiff's severe impairments to be bipolar disorder and borderline personality disorder, the ALJ necessarily found that plaintiff's other alleged mental impairment were not severe. The ALJ considered all of plaintiff's mental impairments in finding that they do not meet the listings or medically equal the listings in 12.04, 12.08 or 12.09.

These three listings encompass all the alleged symptoms of plaintiff's mental impairments.

Listing 12.04, Affective Disorders, is characterized as "disturbance of mood, accompanied by full or partial manic or depression syndrome." Mood refers to "a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." The listing includes depression, anhedonia, sleep disturbance, paranoid thinking, manic syndrome, and bipolar syndrome. Listing 12.08, Personality Disorders, is characterized by personality traits that are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. The listing includes seclusiveness, pathologically inappropriate suspiciousness, hostility, persistent disturbance of mood, passivity or aggressivity, impulsive and damaging behavior, dependence and unstable interpersonal relationships. Listing 12.09, Substance Addiction Disorder, is characterized by behavior and physical changes associated with regular use of substances that affect the central nervous system. The listing includes anxiety, depression, personality disorders and peripheral neuropathies.

The ALJ determined that plaintiff's mental impairments, singly or in combination, did not meet the above three listing requirements because her mental impairments do not cause at least two "marked" limitation and "repeated" episodes of decompensation as required under the Paragraph B criteria, applicable to each of the three listings. The ALJ found the record showed that plaintiff had:

(1) Mild restriction of activities of daily living;

(2) Moderate difficulties in maintaining social functioning;

(3) Moderate difficulties in maintaining concentration, persistence, or pace; and

(4) No episodes of decompensation.

[R 22]. See, 20 CFR Part 404, Subpart P, Appendix 1. Since the Listed Impairments in Paragraph

B, for 12.04, 12.08, and 12.09 are all the same and encompass all the mental impairments alleged by the plaintiff, the fact that the ALJ did not separately address panic disorder (with or without agoraphobia), or obsessive-compulsive disorder, or mood disorder is, at best, harmless error because of the similarity in their Listing requirements. See Petree v. Astrue, 260 Fed.Appx. 33, 40 (10th Cir. 2007) (unpublished).[3]

Plaintiff faults the ALJ for not providing an analysis supporting his finding that plaintiff's severe impairments are bipolar disorder and borderline personality disorder and that her other mental impairments are not severe. The Court disagrees. The ALJ relied on the medical opinion of Minor W. Gordon, Ph.D. and medically recognized personality tests performed by Dr. Gordon to formulate his decision. The ALJ found:

> Minor W. Gordon, Ph.D. evaluated the claimant on May 15, 2007. . . . Dr. Gordon observed her having intense anxiety and anger. Ms. Frey's scores on the Beck Anxiety and Beck Depression Inventories indicated severe emotional duress. Her personality profile was of an immature, narcissistic, and self-indulgent individual who made excessive demands for attention. However, Dr. Gordon opined that her mental condition appeared to be only moderately limiting. He thought she was able to do simple work that involved only occasional and superficial interaction with others. Dr. Gordon could discern no significant evidence in the claimant of memory impairment. In a separate medical source statement, he denied that Ms. Frey had any difficulty with understanding, remembering, and carrying out instructions of any kind. (Exhibit 15F).
>
> . . .
>
> As described by Dr. Gordon (Exhibit 15F), her personality profile indicates that she is immature and passively dependent. He opined that she was a malingerer with only mild depression and anxiety. His Global Assessment of Functioning (GAF) score of 70 for the claimant suggests that Ms. Frey would be capable of generally functioning adequately if she resolved to meet her responsibilities. The undersigned is persuaded, as was Dr. Gordon, that the claimant would be capable of performing

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

some type of routine and repetitive work on a regular basis.

[R. 24]. These findings are consistent with other evidence contained in the record. Thus, the Court finds that the ALJ's findings are supported by substantial evidence.

As to her second issue, plaintiff claims the ALJ did not articulate specific reasons for rejecting the medical opinion of plaintiff's treating physicians and other medical sources. Plaintiff complains that the ALJ adopted the findings of the agency consultant Dr. Gordon and failed to consider the opinions of her medical consultants at CREOKS Mental Health Services, David Shadid, D.O. and therapist Rhonda Whomble and her Day Spring Behavioral Services therapist Charles Eckelt.

Rhonda Whomble is a Licensed Professional Counselor who prepared a Client Assessment Record to evaluate whether plaintiff was eligible for out patient counseling services with CREOKS. [R. 114-136]. The ALJ entered the following findings which address the "Medical Source Opinion" prepared by Ms. Whomble.

> A report from CREOKS dated August 19, 2005 states that the claimant used substances to self-medicate. When she was on her prescribed medication, she decreased her use of illicit drugs and alcohol. Ms. Frey was described as having felt intense anxiety for the past 2-3 months. She was having particular difficulty with her 3-year old son. She was using poor parenting approaches, including yelling at him and slapping him in the face. She ran short on groceries, formula, and diapers. Her counselor at CREOKS described Ms. Frey as "erratic," and "compulsive." Her disorganized and volatile behavior was threatening to have multiple destructive consequences for herself and her family. (Exhibit 5F, p. 9).

[R. 24]. Dr. David Shadid is an osteopathic physician. The ALJ entered the following findings which addressed the "Medication Management Notes" prepared by Dr. Shadid.

> Ms. Frey's severe symptoms of bipolar disorder and panic were compounded by her isolation and lack of a support system. She had been in therapy since age 11 and was put on Prozac at age 13. In January 2007, she alleged having daily panic attacks that

were only partly relieved by medication. Her anxiety was somewhat lessened if she remained at home. On April 5, 2007, she was driving when she hit a man in a motor vehicle accident. She was told that she would be charged with vehicular homicide if the man died. (Exhibit 9F).

[R. 24]. The "Outpatient Request For Prior Authorization" completed by Ms. Whomble shows that plaintiff was referred to CREOKS for counseling based on a diagnosis of bipolar disorder with mixed disturbance and borderline personality disorder. This diagnosis is consistent with the ALJ's determination of plaintiff's severe impairments. [R. 21]. The ALJ properly relied on the <u>comments</u> contained in Ms. Whomble's report to formulate his findings; however, he was not bound by her conclusions, because they contradicted Dr. Gordon's opinion. Dr. Shadid's clinical notes contain plaintiff's own statements and his observations, which he relied upon to evaluate and adjust her medication. There is no indication in the record that Dr. Shadid performed any recognized personality tests or procedures to formulate a medical opinion as to her capacity to work.

Plaintiff also faults the ALJ for not relying on the opinion of Mr. Eckelt, a Licensed Professional Counselor with Day Spring Community Services. Mr. Eckelt opined that plaintiff was "severely impaired." [R. 158]. Under the regulations, in assessing the limitations caused by an alleged disability, the ALJ must consider all of the available evidence in the individual's case record. This includes "acceptable medical sources" and "other sources." "Acceptable medical sources" includes licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists. <u>See</u> 20 CFR 404.1502 and 416.902. "Other sources" not considered "acceptable medical sources" includes nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. <u>See</u> 20 CFR 404.1513(d) and 416.913(d). The ALJ may rely only on "acceptable medical sources" for the following purposes: (1) to establish

the existence of a medically determinable impairment, 20 CFR 404.1513(a) and 416.913(a); (2) for a medical opinion, 20 CFR 404.1527(a)(2) and 416.927(a)(2); and (3) as treating sources whose medical opinions may be entitled to controlling weight. 20 CFR 404.1527(d) and 416.927(d). The ALJ may use evidence from "other sources" only to show the severity of the individual's impairments and how those impairments affect the individual's ability to function. In other words, information from "other sources," such as Mr. Eckelt cannot be used to determine an impairment, provide an opinion, or be the controlling source. SSR 06-03p.

In assessing the limitations caused by plaintiff's mental impairments, the ALJ first properly considered evidence from an "acceptable medical source," which was the Psychological Evaluation performed by Dr. Gordon. Dr. Gordon administered several recognized medical testing procedures to formulate his professional opinion, including: the Wechsler Adult Intelligence Test, the Beck anxiety Inventory, the Beck Depression Inventory, and Minnesota Multiphasic Personality Inventory. [R. 250].

Mr. Eckelt's opinion was not relevant to the ALJ's determination and could not be construed as a treating physician's opinion, because Mr. Eckelt is a therapist. The ALJ properly followed 20 CFR 1513(d)(1), which directs that therapists are not "acceptable medical sources," and the weight given to such evidence is limited to information related to the severity of an impairment and how an impairment affects an individual's ability to work. Clearly, Mr. Eckelt's opinion is not objective medical evidence showing the severity of plaintiff's mental impairment or how her impairment has impacted her ability to work. Mr. Eckelt's letter merely stated a conclusory opinion. Thus, the Court finds it was not error for the ALJ to decline to include Mr. Eckelt's opinion, because his opinion was contrary to the recognized psychological testing performed by Dr. Gordon. For the same reasons,

the ALJ properly considered the comments made by Ms. Whomble, and he properly drew his own conclusions based on those comments. Because Ms. Whomble is a therapist, the ALJ was not obligated to adopt her conclusions, especially when her conclusions conflict with those of Dr. Gordon's. Under the Act, the ALJ must use and rely on acceptable medical sources to determine the impairment, consider a medical opinion and give only those opinions controlling weight. 20 CFR 404.1527(d) and 416.927(d).

Next, plaintiff claims the ALJ erred in failing to consider medical records from plaintiff's treating physician Dr. Shadid. Dr. Shadid's records are merely Dr. Shadid's summary dictation of plaintiff's subjective complaints and the various pain medication he prescribed to treat the symptoms. These records do not contain any diagnostic tests. The ALJ properly relied on these records to conclude that plaintiff's mental impairments could be minimized with proper medication to treat the symptoms of her bipolar distress and borderline personality disorder. The ALJ also cited passages from the records to support his conclusion that much of plaintiff's emotional distress and anxiety primarily triggered by external environment factors and lack of support group, which are both factors within plaintiff's control. Thus, the Court finds no merit in plaintiff's second assignment of error.

As to her third issue, plaintiff contends the ALJ's hypothetical to the vocational expert was incomplete because of the ALJ's failure to consider all of plaintiff's impairments and the limitations resulting from those impairments. There is no merit in this contention.

The ALJ posed the following hypothetical to the vocational expert:

If you're familiar with them, then just apply a full range of, of light and sedentary [exertion]. Now, she carries a diagnosis in the file of a mild of, of malingering as well as mild depression and anxiety, secondary to borderline personality traits, also

11

>borderline personality traits. In that regard, I'm going to have certain limitations. This individual can understand, remember and carry out simple, but not detailed tasks under routine supervision. She is able to complete a normal workday and work week from a mental standpoint and she can adopt to a work setting. She cannot relate effectively to the general public, but she can relate intermittently and superficially with a small number of, of co-workers and supervisors for work-related purpose and she can adapt to a work situation. Using this hypothetical, Mr. Marlowe, considering she has no past relevant work, going down to step five of the sequential evaluation process to unskilled jobs, are there jobs that you can identify and if so, I would ask you to name those jobs and indicate the number that exist in the national and regional economy. . .

[R. 362]. The vocational expert answered "yes" to the hypothetical and listed the previously noted jobs that such a person could perform. Nevertheless, plaintiff claims the ALJ erred in failing to include all her mental limitations in combination and the opinions of Dr. Shadid and her therapists.

The Tenth Circuit instructs that "[h]ypothetical questions posed to vocational experts must sufficiently relate the claimant's particular physical and mental impairments. However, this court has held that the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ, and a hypothetical question will be improper only if it was clearly deficient." Stowe v. Shalala, 13 F.3d 407 (10th Cir, 1993) (unpublished).[4]

The hypothetical posed by the ALJ complies with these requirements. The ALJ included in his hypothetical those mental and physical limitations he found credible from the assessment made by Dr. Gordon and other evidence in the record. The ALJ was not required to incorporate conclusions reached by plaintiff's therapists or the diagnosis accepted by Dr. Shadid for the reasons stated above. Thus, the Court finds no merit to plaintiff's third issue of error.

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

## **Conclusion**

The Court finds that the ALJ's decision is supported by substantial evidence in the record and the correct legal standard was applied. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 2nd day of November, 2009.

_____
T. Lane Wilson
United States Magistrate Judge